**C & C ENTERTAINMENT, INC. and Carlos Donato d/b/a Yagrumo Music; Angel Luis Rivera Plaintiffs**

v.

**Guillermo RIOS–SANCHEZ, d/b/a Grs Records Pedro Paiz d/b/a Grs Records Pablo Aponte and Ignacio Mena Disco Hit Productions, Inc. Pascual Castillo–Paredes Ricardo Viera a/k/a Richard Viera Lamrica Agency, Inc. d/b/a MM Music Publishing Defendants**

No. CIV. 99–1870CCC.

United States District Court,
D. Puerto Rico.

March 28, 2002.

140

Carlos Colón–Marchand, Hato Rey, PR, for Plaintiffs.

Alberto N. Balzac–Colom, Caguas, PR, Alfredo Castellanos–Bayouth, Castellanos Law Firm, P.S.C., Rio Piedras, PR, for Guillermo Rios–Sanchez, Pedro Paiz, Pascual Castillo–Paredes, defendants.

Edgardo R. Jimenez–Calderin, Jimenez Calderin & Carrasquillo, San Juan, PR, for Ricardo Viera, Lamrica Agency, Inc., defendants.

Roberto Sueiro–Del–Valle, San Juan, PR, for Disco Hit Productions, Inc., defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action for violation of the Copyright Act of 1976. 17 U.S.C. §§ 101, et. sec. Plaintiff Angel Luis Rivera alleges that he is the composer of a song entitled "Nuestro Amor es Veneno" ["Veneno"]. He sold the copyright to plaintiff Carlos Donato d/b/a/Yagrumo Music which is now incorporated as C & C Entertainment.[The plaintiffs will all be referred to as Rivera]

Rivera alleges that defendant Pascual Castillo Paredes falsely claimed authorship of "Veneno" and, along with codefendant Lamrica Agency, Inc.[1], obtained a false copyright shortly after plaintiff's own copyright was filed. Plaintiffs' copyright was registered on May 28, 1998. Castillo Paredes' copyright over the same song, listing himself as the composer, is dated June 28, 1998. GRS Records[2] published the song in an album which they produced. Defendant Disco Hit[3] was contracted by its co-defendants to manufacture the compact discs and distribute them. Prior to the dispute and the removal of the album from the market, the disc jacket listed Rivera as the sole author of the song.

Plaintiffs allege that defendants have acted in concert to avoid paying royalties to which he is entitled, thus violating his copyright.[4]

This action is before us on three separate Motions for Summary Judgment; Disco Hit (docket entry 52), Lamrica Agency (docket entry 53), and GRS Records and Castillo (docket entry 57). Plaintiffs filed an opposition to the first two motions (docket entry 56); the third motion is unopposed. Disco Hit replied to the opposition (docket entry 60).

Disco Hit, in its Motion to Dismiss alleges that it merely manufactured and distributed the album, of which "Veneno" was one song. All the material and composer credits were supplied by the record company. The dispute engendering this action began after the album was distributed and Disco Hit alleges that Rivera did not register his copyright until the dispute over royalties arose. It further points out that Rivera was listed as the composer of the song on the disc cover. Disco Hit states that song was removed from the album as soon as it learned of the dispute.

Lamrica alleges that it obtained the rights to "Veneno" from Castillo Paredes who claimed to be the composer and owner of the rights to the song. It further alleges that this action is a contract suit between Rivera and Castillo Paredes.

Lamrica argues that there is joint ownership of the song between Rivera and Castillo or, in the alternative, that no effort to copyright the song was made until after it was already in the public domain.

█ Plaintiff's factual and legal theory includes the fact that Rivera "granted a nonexclusive license to defendants to reproduce [Veneno] rearranged as a 'bachata' by Pascual Castillo Paredes, who himself and with the other co-defendants incorporated such song ... recognizing the author ... to be Rivera, for which song Rivera expected to be paid royalties."[5]

GRS Records and Pascual Castillo–Paredes' Motion for Summary Judgment relies heavily on Rivera's admission in his deposition testimony that he gave Castillo–

---

1. These defendants include Richard Viera, and his corporation Lamrica Agency Inc. d/b/a MM Music Publishing.

2. This defendant is actually Guillermo Rios Sanchez d/b/a as GRS Records. Co-owner Pedro Paiz is deceased and was dismissed as a defendant. (Docket entry 48).

3. Pablo Aponte and Ignacio Mena do business as Disco Hit Productions Inc. Claims against these individual defendants were also dismissed. (*See* docket entry 48).

4. Rivera alleges, at ¶ 3 of his amended complaint (docket entry 10), that GRS Records "assumed payments of all royalties, as they prepared a letter to release Disco Hit Productions from paying any royalties on the musical works."

5. Plaintiff's Opposition to Request for Summary Judgment (docket entry 56), page 3, ¶ 1; see also, page 20.

Paredes the lyrics with the intention that they be arranged as a bachata, that Rivera approved the music over the telephone, approved the change of title, and all albums produced gave him the credit for the song. They contend that Rivera gave defendants' an implied license to use the lyrics, and compose the music for them and, therefore, the song is a "joint work" as defined by Copyright Act 17 U.S.C. § 101.[6]

Plaintiff has acknowledged in his deposition that he gave Castillo–Paredes the lyrics for the express purpose of composing bachata music for it and including it in his album.

■ A nonexclusive license may be granted orally, or may even be implied from conduct. A nonexclusive license may arise by implication where the creator of a work, at a defendant's request, hands it over, intending that the defendant copy and distribute it. *MacLean Assoc., Inc., v. Wm M. Mercer–Meidinger–Hansen Inc.* 952 F.2d 769 (3rd Cir.1991). Oral nonexclusive copyright licenses are enforceable. *Gracen v. Bradford Exchange* 698 F.2d 300 (7th Cir.1983).

In his opposition to the motions for summary judgment there is no allegation that the defendants exploited the song beyond the scope of the non-exclusive license that the plaintiff admittedly gave Castillo–Paredes.

As to the concept of joint authorship raised by defendants, plaintiff has acknowledged in his deposition that he gave Castillo–Paredes the lyrics for the express purpose of composing "bachata" music for it and including it in his album.

■ A co-authorship claimant bears the burden of establishing that each of the putative coauthors (1) made independently copyright table contributions to the work; and (2) fully intended to be co-authors. *Thomson v. Larson* 147 F.3d 195 (2nd Cir.1998) citing *Childress v. Taylor* 945 F.2d 500 (2nd Cir.1991) which establishes "the test." *Childress* recognizes, however, that the issue of co-authorship intent "requires less exacting consideration in the context of traditional forms of collaboration", such as between the creators of the lyrics and music of a song and that "parts of a unitary whole are 'interdependent' when they have some meaning standing alone but achieve their primary significance because of their combined effect **as in the case of the words and music of a song.**" *Id.,* at 505, 503. (Emphasis ours.) Before that, in *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,* 140 F.2d 268 (2nd Cir.1944) Judge Learned Hand endorsed the formulation of a "joint work" or "joint authorship." There, a lyricist and composer were found to be co-authors where the lyricist wrote the words for the song ('December and May'), intending that someone else would eventually compose the music for those particular words. Judge Hand masterfully explains the concept of "joint work" in this case, at page 267:

> [I]f one of several authors took out the copyright in his own name upon a joint work, the copyright was valid, but the copyright owner held it upon a constructive trust for the other authors....

> [I]t makes no difference whether the authors work in concert, or even whether they know each other; it is enough that they mean their contributions to be complementary in the sense that they are to be embodied in a single work to be performed as such. That was the case here: Marks wrote the words for a song; Loraine composed the music as

---

**6.** A joint work is defined in this section as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

music for that song. It is true that each knew that his part could be used separately; the words, as a 'lyric;' the melody as music. But that was not their purpose; the words and the music were to be enjoyed and performed together; unlike the parts of a 'composite work,' each of which is intended to be used separately, and whose only unity is that they are bound together.... The popularity of a song turns upon both the words and the music; the share of each in its success cannot be appraised; they interpenetrate each other as much as the notes of the melody, or separate words of the 'lyric.' The value of the privilege of renewal is measured by the survival of their combined power to please the public taste. To allow the author to prevent the composer, or the composer to prevent the author, from exploiting the power to please, would be to allow him to deprive his fellow of the most valuable part of his contribution; to take away the kernel and leave him only the husk.

The undisputed facts of this case bring it within these parameters: Rivera gave Castillo–Paredes the words to the song, intending that the latter write the music ("bachata") and include it in his album. The evidence shows that when plaintiff chose Castillo–Paredes to compose the music for "Veneno" he intended that the words and the music be enjoyed and performed together. We, therefore, find that the song "Veneno" was the joint work of plaintiff and Castillo–Paredes and defendants did not infringe on Rivera's copyright.

With regard to the allegation of infringement by Castillo–Paredes for having registered a copyright over the same material under his name, one month after plaintiff did so, we find this is not material to the infringement issue: 17 U.S.C. § 201(a) states in pertinent part, "... copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of the copyright in the work." As composer of the music, Castillo–Paredes would have an ownership interest in the copyright, too.

■ Rivera further contends that his copyright has been infringed by defendants failure to pay him royalties. Rivera cites the answers to his interrogatories # 5 and # 6 as evidence of the agreement for royalties:

> 5....[*After*] noticing that the royalties were forthcoming, ...Rivera visited Mr. Richard Viera ....
>
> 6....[O]n many times after that, both plaintiff Mr. Rivera and Mr. Castillo ratified *their unspoken agreement* that he would receive royalties for the song.

(Our emphasis.) The statement reveals any terms of the alleged agreement. The quotes chosen by Rivera demonstrates that there was no concrete agreement on the amount of royalties, or even if royalties were to be paid for the lyrics.

Plaintiffs' sole remedy for a breach of a royalty agreement, however, would be an action for monetary damages—the Copyright Act need not be construed. *Royal v. Leading Edge Products, Inc.* 833 F.2d 1,3 (1st Cir.1987).. The issue is, therefore, a contractual one and, even though the contract concerns a copyright, it does not grant the federal courts jurisdiction over what is essentially a garden variety contract dispute. *Id.*, at p. 5. This is simply a state law claim which was not even asserted in the complaint.

For the above-stated reasons, we conclude that Castillo–Paredes had a non-exclusive license to compose music to, and to record and distribute plaintiffs' song, "Veneno" in the album, *Que me las pegues, pero que no me dejes,* that the song was the joint work of plaintiff and Castillo–Paredes as co-authors, and that therefore,

defendants have not infringed on plaintiffs' copyright. Accordingly, the Motions for Summary Judgment (docket entries 52, 53, and 57) are GRANTED. Judgment will be entered dismissing this action.

SO ORDERED.