

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2006

# Natl Assn Stock Car v. Scharle

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1816

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Natl Assn Stock Car v. Scharle" (2006). *2006 Decisions.* Paper 862.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/862

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1816

NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC. (NASCAR)

v.

MATTHEW  T. SCHARLE; FRANKLIN MINT COMPANY
d/b/a THE FRANKLIN MINT; BRUCE J. NEWMAN

Matthew T. Scharle,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No: 04-cv-05228
District Court Judge: Hon. Marvin Katz

Argued February 2, 2006

Before: McKEE, SMITH, and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: June 21, 2006)

Matthew I. Cohen, Esq. (Argued)
Jared H. Reiss, Esq.
Neal A. Jacobs, Esq.
The Jacobs Law Group
1800 John F. Kennedy Boulevard
Suite 404
Philadelphia, PA 19103

<u>Attorneys for Appellant</u>

Martin J. Black, Esq. (Argued)
Jeffrey S. Edwards, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Attorneys for Appellee Franklin Mint Co.


Roderick J. Enns, Esq. (Argued)
Enns & Archer LLP
939 Burke Street
Winston-Salem, NC 27101

Camille M. Miller, Esq.
Cozen & O'Connor
1900 Market Street
4th Floor
Philadelphia, PA 19103

Attorneys for Appellee National Association for Stock Car Auto Racing, Inc.

Vincent V. Carissimi, Esq.
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103

Attorney for Appellee Bruce J. Newman

---

OPINION

---

McKEE, Circuit Judge.

Matthew T. Scharle appeals the district court's orders of February 11 and 14, 2005

granting judgment in favor of the Franklin Mint, Bruce J. Newman, and the National

Association for Stock Car Racing ("NASCAR"). For the reasons that follow, we will affirm.

## I.

Inasmuch as we write primarily for the parties, we will only briefly summarize the underlying facts and procedural history of this dispute. Scharle did design work for the Mint pursuant to an independent contractor agreement ("Master Agreement"). The Master Agreement provided that work would be assigned via riders, however, although Scharle did a number of assignments for the Mint after execution of the Master Agreement, none was pursuant to any rider.

In the fall of 2002, the Mint asked Scharle to design a new trophy for NASCAR to replace the Winston Cup, the trophy then in use. The new trophy was to be known as the "NASCAR NEXTEL Cup." As usual, no rider to the Master Agreement was executed. Scharle nevertheless agreed to the project, and from then until the summer of 2003, he created numerous copies of his computer images and revisions for the trophy's design. He delivered each of them to the Mint. In separate agreements involving NASCAR, the Mint, and Bruce Newman, who was then the Mint's president, Newman was to be in charge of the project and receive credit for the trophy's design. NASCAR unveiled the trophy and began using it in its marketing and promotional efforts. NASCAR attributed the design to Newman, and Scharle's attorney contacted NASCAR claiming that Scharle was the designer of the trophy. He demanded rights in the design for Scharle, and claimed infringement of Scharle's rights. He also made several specific demands for Scharle,

3

including: additional payment, public attribution, and photographs of the trophy and the winning driver, or, in the alternative, $2 million for alleged business loss from the misattribution.

Thereafter, NASCAR sued Scharle, the Mint, and Newman for a declaratory judgment. NASCAR asked the court to declare that it owned all rights in the trophy, free of any copyrights or attribution rights of Sharle. The complaint attached NASCAR's contract with the Mint. NASCAR simultaneously moved for an expedited preliminary injunction to prevent Scharle from interfering in NASCAR's use of the trophy at the final Nextel Cup race and awards banquet. The district court ordered that all discovery related to the motion for preliminary injunction be completed by November 17, 2004. After a conference with the parties on November 18, 2004, the district court issued a scheduling order that discovery be completed by March 21, 2005 and that any motions for summary judgment be filed within ten days thereafter.

Scharle answered the complaint on November 17, 2004, counter-claiming against NASCAR and cross-claiming against Newman. He denied conveying any rights in his computer drawings to the Mint, NASCAR, or Newman and denied that the Mint ever could have conveyed such rights to NASCAR. He asserted the following causes of action: copyright infringement; breach of a right to attribution and integrity; and a claim for declaratory judgment. He alleged that his work on the trophy was not subject to the Master Agreement with the Mint, that Newman and NASCAR could not have obtained any rights from the Mint, and that he conveyed no rights in the trophy design to the Mint,

4

Newman, or NASCAR.

On December 27, 2004, the Mint filed an answer to NASCAR's complaint and a cross-claim against Scharle seeking a declaration that Scharle had no rights in the trophy or its design. The Mint also filed a motion for summary judgment, asserting that there was no genuine issue of material fact as to assignment of the copyright, or in the alternative, that Scharle had granted the Mint an implied license and had no right of attribution.

On January 24, 2005, Scharle moved to dismiss the Mint's cross-claim on the ground that there was no ripe controversy between him and the Mint. Scharle also filed a response to the Mint's motion for summary judgment stating the motion was moot in light of his motion to dismiss. The Mint responded on February 10, 2005.

On February 11, 2005, before the close of discovery, the district court granted the Mint's motion for summary judgment on all issues. It found there was no genuine issue of material fact, and determined that Scharle had transferred all rights in his computer trophy drawings to the Mint, that he had granted an implied license in the trophy, and that he had no attribution right in the drawings. The court also denied Scharle's motion to dismiss the Mint's cross-claim, granted NASCAR's motion to dismiss and Newman's motion to dismiss or motion for summary judgment, and ordered the case closed. It entered judgment in favor of the Mint, NASCAR, and Newman on February 14, 2005.

## II.

We must first address Scharle's contention that the district court prematurely

5

granted summary judgment. We review that claim for an abuse of discretion. *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002).

A party against whom a claim, counterclaim, or cross-claim is made may move for summary judgment "at any time." Fed. R. Civ. P. 56(b). However, the motion should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, Rule 56 provides:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Rule 56 further provides:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). "[I]n all but the most exceptional cases, failure to comply with Rule 56(f) is fatal to a claim of insufficient discovery on appeal." *Bradley*, 299 F.3d at 207.

Although Scharle's response to Newman's motion argued against converting the

6

motion to summary judgment because of inadequate time for discovery, and although he now argues that there were still outstanding discovery requests when the judgment was filed, Scharle failed to file any Rule 56(f) affidavit in response to either motion. And he failed to "present by affidavit facts essential to justify the party's opposition." Moreover, we have explained that there is a strong presumption against finding constructive compliance with Rule 56(f). *Bradley*, 299 F.3d at 207. Scharle has not explained why he did not file a Rule 56(f) affidavit, and nothing on this record suggests that this case falls into the category of "most exceptional of cases[,]" *id.,* where failure to file a Rule 56(f) affidavit is excused; nor does Scharle argue to the contrary.

### III.

Scharle also contends that the Mint's cross-claim against him failed to allege facts establishing a justiciable controversy between him and the Mint and that the cross-claim is not ripe for declaratory judgment.

A declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied. *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Gov't of United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). "Abstract, hypothetical, or contingent questions" are not proper matters for declaratory judgment, but the standing requirements are met when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Id.* Our inquiry into constitutional standing considers the adversity of interest of the parties, the

7

conclusiveness of any judgment, and the practical help or utility of that judgment. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

These parties are clearly adverse. NASCAR's action against Scharle, the Mint, and Newman sought a declaratory judgment that NASCAR owned the copyright rights to the trophy, exclusive of any copyright or attribution rights Sharle might claim. The Mint was already a defendant in the action and may have faced liability to NASCAR had it not been shown that Scharle had transferred his rights to it. Further, although Scharle did not sue the Mint itself, his answer and counterclaim allege infringing acts by the Mint, and that would be an issue in the action which was currently proceeding. Moreover, these circumstances will not result in an advisory opinion based upon a hypothetical scenario. *See Pic-A-State PA v. Reno*, 76 F.3d 1294, 1300 (3d Cir. 1996). Rather, a judgment resolves the competing copyright claims and rights in the trophy.

Accordingly, the Mint's claim for declaratory judgment is justiciable.

## IV.

Scharle disputes that the trophy project was covered by the Master Agreement, that he assigned his rights to the Mint, or that the Mint had the ability to convey those rights to NASCAR. We need not reach this argument, however, because it is clear that Scharle granted an implied license to NASCAR to use the trophy.

"A nonexclusive license may arise by implication where the creator of a work at a defendant's request 'hands it over, intending that the defendant copy and distribute it.'" *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d

8

Cir. 1991) (quoting *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)).

We have stated that "[d]elivery of a copy of the creation 'is one factor that may be relied

upon in determining that an implied license has been granted.'" *Id.* (quoting *Effects*

*Associates*, 908 F.2d at 559 n.6). Other courts have found an implied license where three

factors are present: "(1) a person (the licensee) requests the creation of a work, (2) the

creator (the licensor) makes the particular work and delivers it to the licensee who

requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his

work." *Atkins v. Fischer*, 331 F.3d 988, 991-92 (D.C. Cir. 2003) (citing *Lulirama Ltd.,*

*Inc. v. Axcess Broad. Servs.*, 128 F.3d 872, 879 (5th Cir. 1997) and *IAE, Inc. v. Shaver*,

74 F.3d 768, 776 (7th Cir. 1996)). Whether there is an implied license is determined by

an objective inquiry into the facts; the private hopes of the creator are not relevant. *John*

*G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 42 (1st Cir. 2003). It

is NASCAR's burden as the alleged infringer to establish the affirmative defense of

implied license. *Atkins*, 331 F.3d at 992.

Scharle's own deposition establishes that he knew he was being asked to "submit

designs for the cup," the sponsor was NASCAR, and that he was to design a new trophy

to replace the Winston Cup which was being retired. Scharle Dep. at 31, 100; Appx. at

R-430, R-453. Moreover, the images he created depicted the trophy bearing the phrase:

"NEXTEL CHAMPION" on its base. Appx. R-469-71. His invoices referred to the

"NASCAR-NEXTEL TROPHY" or the "Winston Cup Trophy." *Id.* at R-464-68.

Further, email exchanges between Scharle and Donna Tarquino, his contact at the Mint,

9

show that he was aware that the project was for the "Winston Cup," and that the sponsor had a say in the final design. Appx. R-476-81.

Moreover, Scharle conceded during his deposition that, while working on the designs for the trophy, he made the following inquiry of Tarquino regarding attribution or credit: "You know, this is a big thing. This isn't a Franklin Mint product. This is a very high profile thing. Is there any way that the Franklin Mint would be attributed as being the designer, is there any way I could be along with that, Matt Scharle or Franklin Mint/Matt Scharle?" Scharle Dep. at 113, Appx. R-456. Although he was informed that he would not be credited with the design, or share in credit for it, he nevertheless continued working on the trophy.

There is no dispute that Scharle was asked to create images, pursuant to the Master Agreement (as discussed above), that would be used for the new NASCAR trophy. Scharle's own deposition testimony establishes that he knew there would be a lot of exposure for the trophy, and it is clear that he understood the scope of the trophy's use. It is undisputed that he delivered his images to the Mint and that he was paid for those images.

Scharle cannot seriously argue that he did not intend for NASCAR to cast and use the trophy he had designed. His deposition testimony demonstrates that he did, and that he anticipated that NASCAR would use the trophy without crediting his role in creating it. NASCAR, through the Mint, requested the designs, Scharle, through the Mint, created and delivered those designs to NASCAR, and Scharle expected NASCAR to use the

10

trophy in the "high-profile" manner it eventually did.

As the district court pointed out, there is no privity requirement for an implied license. We believe this case is very similar to *Effects Associates*.[1] Based upon the undisputed facts recited above, Scharle created the trophy images with the intent that they would be used and displayed by NASCAR. Accordingly, the undisputed facts establish that NASCAR was granted an implied license.

## V.

Similarly, Scharle cannot establish rights under the Visual Artists' Rights Act ("VARA"), 17 U.S.C. § 106A.[2] VARA protects the rights of attribution and integrity of the author of a "work of visual art." 17 U.S.C. § 106A. A "work of visual art" is defined as:

> (1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple case, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or

> (2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

---

[1] Although Scharle cites *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998), we believe this case is much closer to *Effects Associates*.

[2] We have not previously discussed VARA.

17 U.S.C. § 101.  Among other things, a work of visual art does *not* include any: "technical drawing, diagram, model, . . . merchandising item[,] or advertising [or] promotional . . . material."  *Id.*

The district court found that Scharle's drawings for the trophy fell outside the purview of VARA and granted summary judgment for the Mint on this claim.  The court determined that Scharle's works were drafts which did "not exist in a single copy or a limited quantity of signed and numbered copies, but instead as multiple attempts to arrive at the optimal design for the trophy."  Dist. Ct. Op. at 21, Appx. R-662.

We agree with the district court's conclusion. We note, however, that there is at least one other ground upon which the district court could have relied upon in concluding that VARA did not apply to Scharle's work.  We believe that the court could have concluded as a matter of law that Scharle created technical drawings, diagrams, or models for the trophy, and are therefore excluded from the definition of "works of visual art."  17 U.S.C. § 101.

Accordingly, the district court properly determined that the trophy images were not "works of visual art" under VARA.

## VI.

For the reasons set forth above, we will affirm the district court's grant of summary judgment.

12