**60**

John C. BOYLE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–774C.

United States Court of Federal Claims.

May 28, 1999.

John C. Boyle, Edison, New Jersey, pro se.

Grace Karaffa, U.S. Department of Justice, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden and Vito J. DePietro, for defendant. Thomas J. Byrnes, U.S. Department of Justice, of counsel.

## OPINION

FIRESTONE, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the defendant's motion to dismiss is **GRANTED**.

## FACTS

At the heart of plaintiff's complaint is a dispute over an alleged copying of plaintiff's investment product by several private parties. Plaintiff holds a copyright in an original work of authorship describing a mutual fund called "Moneyfor." In 1989, plaintiff mailed a copyrighted "Executive Summary" of Moneyfor to several money managers, including an executive at Wells Fargo Nikko Investment Advisors ("Wells Fargo"). The Executive Summary describes eight different mutual funds targeted to different maturity dates depending upon the year the money is needed by investors. Wells Fargo never entered into any agreements with the plaintiff with respect to Moneyfor, but several years later Wells Fargo began to market an allegedly-similar mutual fund product.

In particular, on March 1, 1994, Wells Fargo registered for public sale "LifePath" mutual funds with the Securities and Exchange Commission. These LifePath funds also are tailored to meet different maturity dates depending upon when the money is needed by investors. In addition, on September 6, 1994, the United States Patent and Trade Office ("PTO") issued Wells Fargo a service mark registration for the term "LIFEPATH 2000," which Wells Fargo uses to market its LifePath mutual funds.[1]

Upon learning of Wells Fargo's LifePath financial product, plaintiff sued Wells Fargo and others affiliated with Wells Fargo in the United States District Court for the Southern District of New York under various theories of recovery, including copyright infringement, misappropriation of trade secrets,

fraudulent concealment, unjust enrichment, and breach of a bailment contract. In a series of decisions, the district court rejected each of plaintiff's claims. *See Boyle v. Stephens, Inc.,* No. 97–1351, 1997 WL 529006 (S.D.N.Y. Aug. 26, 1997); *Boyle v. Stephens, Inc.,* No. 97–1351, 1997 WL 760498 (S.D.N.Y. Dec. 9, 1997); *Boyle v. Stephens, Inc.,* No. 97–1351, 1998 WL 80175 (S.D.N.Y. Feb. 25, 1998); *Boyle v. Stephens, Inc.,* No. 97–1351, 1998 WL 690816 (S.D.N.Y. Sept. 29, 1998).

After failing to obtain relief in any of these actions, plaintiff filed his complaint in this court on October 5, 1998. In his complaint plaintiff seeks compensation and injunctive relief in connection with the government's alleged infringement of his copyright under 28 U.S.C. § 1498(b) (1994 & Supp.1999) and taking of his copyright under the Fifth Amendment. The relief plaintiff seeks includes: (1) the immediate cancellation of Wells Fargo's trademark/service mark; (2) $7.5 million in damages; (3) retractions by the United States in any publication that used the service mark; (4) compensation for the unjust destruction of plaintiff's copyright; and (5) a guarantee by the United States that it will recognize plaintiff's first trademark for his new product "Cross–Fund."

On February 1, 1999, the United States moved to dismiss plaintiff's complaint for failure to state a claim. Plaintiff opposes this motion and has moved for summary judgment. Oral argument on the motion to dismiss was heard on May 18, 1999.

## DISCUSSION

### A. Standard of Review

Factual inquiry on a motion to dismiss under RCFC 12(b)(4) is limited. The issue is not whether the plaintiff ultimately will prevail but whether the plaintiff is entitled to offer evidence to support facts alleged in the complaint. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Aleut Community of St. Paul Island v. United States,* 202 Ct.Cl. 182, 195, 480 F.2d 831, 838 (1973). Thus, a complaint

---

1. Plaintiff contends that Wells Fargo's service mark covers the numbers 2000, 2010, 2020, 2030, 2040, 2050, 2060, 2070, 2080, 2090, and

3000. In the materials presented to the court is appears that these numbers are all used in connection with the LifePath name.

should not be dismissed under RCFC 12(b) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant. *See Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir. 1988) (citing *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988)).

Further, the court recognizes that plaintiff has proceeded *pro se* and that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). As often done with *pro se* plaintiffs, the court searches the record "to see if plaintiff has a cause of action somewhere displayed." *Clemens v. United States,* No. 96–660T, 1997 WL 881205, at *2 (Fed.Cl. Oct. 14, 1997) (quoting *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285, 1292 (1969)).

## B. Infringement

■ We begin with plaintiff's claim for compensation under 28 U.S.C. § 1498(b) (1994 & Supp.1999). Under section 1498(b), the United States is liable for copyright infringement upon proof that there is a direct appropriation of the copyright by the United States or by a person acting on behalf of the United States. Section 1498(b), the waiver of the sovereign immunity provision, states:

[W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringe-

ment shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement ....

Here, plaintiff does not allege that the United States has itself infringed upon plaintiff's copyrighted materials. Nor is plaintiff alleging that Wells Fargo's copyright infringement was carried out for the United States. Instead, plaintiff contends that the United States's wrongful issuance of a service mark registration to Wells Fargo, and its subsequent refusal to cancel the service mark, resulted in an infringement of his copyright.[2]

■ As noted above, the United States District Court for the Southern District of New York previously has determined that Wells Fargo did not infringe on plaintiff's copyright. Under principles of collateral estoppel the plaintiff is bound by that determination. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Because Wells Fargo was not liable for infringing on plaintiff's copyright, it is difficult to imagine how the United States in issuing a service mark to Wells Fargo could interfere with plaintiff's copyright. In any event, even if the plaintiff had not pursued Wells Fargo, the United States still would not be liable for the purely private actions of parties like Wells Fargo, who through a service mark or otherwise have allegedly infringed on a copyright. Indeed, the United States would not be liable even if its actions were deemed to have contributed to an infringement of a copyright by a private party. Although the court is not aware of any copyright case that directly addresses the United States's liability for allegedly contributing to another's infringement, the courts have addressed this issue in the context of patent infringement under 28 U.S.C. § 1498(a) (1994 & Supp.1999), upon which section 1498(b) is based.[3] In *Decca Ltd. v. United States,* the

---

**2.** At oral argument plaintiff asserted that Wells Fargo's ability to market its LifePath mutual funds for various tax-deferred retirement programs is evidence of a use by the United States. Plaintiff ultimately agreed, however, that this is not a direct use by the United States.

**3.** Section 1498(b) was created when Congress "extended" the provisions of section 1498(a) to permit an action in this court for copyright infringements. *See* S. Rep. No. 86–1877, at 2 (1960); *see also Auerbach v. Sverdrup Corp.,* 829 F.2d 175, 179–80 (D.C.Cir.1987) (construing sec-

Court of Claims explained that the United States is not liable for inducing others to infringe a patent:

> Because section 1498 is an eminent domain statute, the Government has consented thereunder only to be sued for its taking of a patent license. Expressed differently, section 1498 is a waiver of sovereign immunity only with respect to a direct governmental infringement of a patent. *Activities of the Government which fall short of direct infringement do not give rise to governmental liability because the Government has not waived its sovereign immunity with respect to such activities. Hence, the Government is not liable for its inducing infringement by others, for its conduct contributory to infringement of others, or for what, but for section 1498, would be contributory (rather than direct) infringement of its suppliers.* Although these activities have a tortious ring, the Government has not agreed to assume liability for them. In short, under section 1498, the Government has agreed to be sued only for its direct infringement of a patent. (emphasis added).

*Decca Ltd. v. United States*, 225 Ct.Cl. 326, 335–36, 640 F.2d 1156, 1167 (1980); *see Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1581 (Fed.Cir.1997); *Motorola, Inc. v. United States*, 729 F.2d 765, 768 n. 3 (Fed.Cir. 1984).

Plaintiff's argument that the United States infringed on plaintiff's copyright by issuing a service mark registration to Wells Fargo and subsequently refusing to cancel it, amounts to, at best, an allegation that the United States induced or contributed to an infringement of plaintiff's copyright by another. As such, plaintiff's argument falls squarely within *Decca*, and its reading of section 1498. Accordingly, plaintiff does not state a cause of action under section 1498(b).

## C. Plaintiff's Taking Claim

Plaintiff also claims he is entitled to compensation under the Fifth Amendment on the grounds that the PTO "effectively destroyed" his copyright by issuing a service mark regis-

tration to Wells Fargo and not canceling the registration when plaintiff notified the PTO of his "senior use." Plaintiff's "taking" argument must fail, however, because it is based on a fundamental misunderstanding of the nature of copyrights and service marks.

Under 17 U.S.C. § 106 (1994 & Supp. 1999), the owner of a copyright has the exclusive right to do and to authorize any of the following: "(1) to reproduce the copyrighted work . . .; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public . . . ." Thus, a copyright gives the owner of a creative work the right to keep others from reproducing or adapting the work without the owner's permission. There are, however, limitations on the right to prevent reproduction or adaptation of a copyrighted work. Section 102(b) of Title 17 provides:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b) (1994).

 Thus, a copyright does not preclude others from using ideas found in a copyrighted work. *See id.; Boyle v. Stephens, Inc.*, No. 97–1351, 1998 WL 80175, at *3 (S.D.N.Y. Feb. 25, 1998) (citing 17 U.S.C. § 102(b) (1988)); *Meade v. United States*, 27 Fed.Cl. 367, 370 (1992); 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.01[A], at 8–13 (1998). As the District Court for the Southern District of New York stressed in dismissing plaintiff's claim against Wells Fargo, "once an idea is conceived, the copyright laws do not prevent others from exploiting it." *Boyle v. Stephens, Inc.*, No. 97–1351, 1998 WL 80175, at *3 (S.D.N.Y. Feb. 25, 1998) (citing *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992)).

 A service mark, in contrast to a copyright, is a distinctive word, phrase, or logo

tion 1498(b) by analyzing "caselaw interpreting the sister provision, section 1498(a), waiving im-

munity for patent infringements by the government").

that is used "to identify and distinguish the services of one person ... from the services of others and to indicate the source of the services ...." 15 U.S.C. § 1127 (1994). Service marks are created through their use in commerce by a particular business. *See* 1 JEROME GILSON & ANNE GILSON LALONDE, TRADEMARK PROTECTION AND PRACTICE § 1.03[7], at 1–37 to 1–39, § 3.03, at 3–70 to 3–72 (1998); *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.*, 989 F.2d 985, 991 (8th Cir.1993). Once a business adopts and uses a distinctive mark, that business has the right to prevent others thereafter from using confusingly similar marks.

Importantly, while it is possible that a service mark might infringe upon a copyright, a service mark cannot "destroy" a copyright. To the extent a copyright holder believes that a service mark interferes with his copyright, the copyright holder may pursue an infringement claim against the service mark holder for appropriate relief.[4] In short, a service mark does not provide its holder with the right to infringe on another's copyright.

The fact that the PTO approves the service mark does not alter a service mark holder's liability for copyright infringement. A service mark may exist without it receiving a federal registration from the PTO. *See* NIMMER § 4.01, at 4–2.1; JAMES E. HAWES, TRADEMARK REGISTRATION PRACTICE § 1:7, at 1–12 to 1–13, 1:9, at 1–16 (1999). Federal registration of a service mark with the PTO provides the service mark holder with certain federally enforceable rights to protect the service mark. Registration with the PTO does not, however, provide the service mark holder with the right to infringe on another's copyright.

The PTO's role in approving a registration is limited to reviewing the appropriateness of the service mark under specified standards and to determining whether there are similar pre-existing marks that could be confused with the proposed mark. *See* 15 U.S.C. § 1062 (1994); *see also* NIMMER § 3.04[1], at

3–82 to 3–82.1; HAWES § 1:10, at 1–16 to 1–17. The PTO is not required to examine whether a service mark might lead or result in infringement of a copyright. The PTO, however, provides third parties with the opportunity to object to the registration prior to approval and to seek cancellation after the registration, under appropriate circumstances. *See* 15 U.S.C. § 1063 (1994) (opposition to registration); 15 U.S.C. § 1064 (1994 & Supp.1999) (cancellation of registration); *see also* NIMMER § 3.04[1], at 3–82 to 3–82.1; HAWES § 1:10, at 1–16 to 1–17. These procedures give copyright holders the opportunity to object to the issuance of a service mark. The PTO is not, however, responsible for any infringement. In sum, because the holder of a service mark remains liable for infringement, the PTO's decision to register a service mark cannot destroy a pre-existing copyright. For this reason, there is no taking.

For a similar reason, plaintiff's contention that the PTO's failure to cancel Well Fargo's service mark registration resulted in a taking also must fail. Plaintiff contends that while he never formally asked the PTO to set aside Wells Fargo's service mark registration, he told the PTO that he believed Wells Fargo's service mark was infringing on his copyright and that the PTO's failure to act amounts to a taking. As noted above, there is an administrative procedure available to challenge the propriety of service mark registrations. Petitions to cancel service mark registrations are filed with the Trademark Trial and Appeal Board. *See* 37 C.F.R. § 2.111 (1999). A person who is dissatisfied with a decision of the Trademark Trial and Appeal Board to cancel or sustain a service mark registration may appeal directly to the United States Court of Appeals for the Federal Circuit. *See* 37 C.F.R. § 2.145 (1999). Plaintiff admitted at oral argument that he had decided not to pursue this administrative· process but decided instead to challenge the PTO's inaction as a taking in this court. The PTO had no obligation to take action on plaintiff's information. The PTO's obligation to act on

---

4. As discussed above, plaintiff has pursued an infringement claim against Wells Fargo without success. While the court appreciates plaintiff's sincere belief that Wells Fargo has acted improp-

erly with regard to his Moneyfor materials, plaintiff is bound by the district court's rulings, and this court does not have jurisdiction to revisit those decisions.

cancellation requests is set out in the above-cited regulation. Having failed to avail himself of this procedure, plaintiff should not be heard to complain about the PTO's failure to act. Moreover, because registration of a service mark cannot result in the destruction or taking of a copyright in the first instance, the PTO's failure to cancel Wells Fargo's service mark cannot cause a taking.

### D. Plaintiff's Claims for Injunctive Relief

Plaintiff also seeks cancellation of Wells Fargo's service mark, retractions by the United States in any publication that used the service mark, and a guarantee by the United States that it will recognize plaintiff's first trademark for his new product "Cross–Fund." This court does not have general equitable power to issue injunctions in cases other than those in which such power has explicitly been granted. As a result, this court does not have jurisdiction over plaintiff's claim for cancellation or for similar forms of injunctive relief. *See United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Beck v. Secretary of Dep't of HHS*, 924 F.2d 1029, 1036 (Fed.Cir.1991).

### CONCLUSION

For the reasons stated above, the court finds that plaintiff has failed to state a claim upon which relief may be granted. Accordingly, defendant's motion to dismiss is **GRANTED**. Plaintiff's motion for summary judgment is **DENIED**. The clerk shall enter an order dismissing this case with prejudice. The parties are to bear their own costs.