RT COMPUTER GRAPHICS,
INC., Plaintiff,

v.

UNITED STATES, Defendant,

and

PhotoAssist, Inc., Third-party defendant.

No. 97–476C.

United States Court of Federal Claims.

Sept. 22, 1999.

Paul Adams, Peacock, Myers & Adams, P.C., Albuquerque, New Mexico, attorney of record for the plaintiff. Rod D. Baker, Peacock, Myers & Adams, P.C., Albuquerque, New Mexico, of counsel.

Grace Karaffa, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Vito J. DiPietro, Director, Civil Division, and Frank W. Hunger, Assistant Attorney General, attorneys of record for the defendant. Thomas J. Byrnes, Assistant Director, Department of Justice, Washington, D.C., of counsel.

Lee Thomas Ellis, Jr., Baker & Hostetler, Washington, D.C., attorney of record for the third-party defendant.

## OPINION

HORN, Judge.

The above-captioned case comes before the court on the parties' cross-motions for summary judgment on the issue of copyright infringement. According to the plaintiff, the defendant, the United States Postal Service, failed to give credit to plaintiff, RT Computer Graphics, Inc., when defendant used plaintiff's copyrighted electronic clip art border designs in defendant's American Indian Dances stamp series and related products. Plaintiff alleges that an authorship credit requirement in the parties' licensing agreement for the related products was a condition precedent, and that plaintiff's consent for the use of the copyrighted material was not given because the condition precedent was not met by the Postal Service. Alternatively, RT Graphics argues that the failure to provide credit was a material breach of the essential terms of the licensing agreement, and the breach entitled plaintiff to rescind the contract. Under both theories, plaintiff contends that it is entitled to summary judgment of copyright infringement by the Postal Service. Defendant, however, counters that it is entitled to a summary judgment of non-infringement because plaintiff consented to the use of the copyrighted designs through the licensing agreements, and "[w]here a work is reproduced with the consent of the copyright owner, that consent is a complete defense to a claim that the reproduction infringes the copyright."

After careful consideration of the record, the parties' filings, and the relevant law, the court holds that the credit requirement was not a condition precedent to plaintiff's consent to use the copyrighted material, and that the defendant did not repudiate the valid licensing agreements or act in a manner which would have indicated a repudiation of those agreements. Thus, as defendant at all times had plaintiff's consent to use the copyrighted material, summary judgment of non-infringement of plaintiff's copyrights is appropriate.

### FINDINGS OF FACT

The plaintiff, RT Computer Graphics, Inc. ("RT Graphics"), is a corporation organized under the laws of the State of New Mexico, with its principal place of business in Rio Rancho, New Mexico. RT Graphics is a designer, manufacturer and distributor of computer software and graphics collections, and is the holder of federally-registered copyrights in two collections of electronic clip art called the Santa Fe Collection and the

Plains Collection.[1]   These collections contain images of various southwestern-, midwestern and/or Native American-styled border designs.   According to the plaintiff, it "extensively uses the [border designs] and components thereof in promoting and advertising its software products, and the [border designs] are widely known and associated with RT Graphics."

In August of 1995, Jana Belsky, a senior photo researcher at PhotoAssist, Inc., on behalf of the United States Postal Service, spoke via telephone with Paul D. Gibson, an employee of RT Graphics.  Ms. Belsky asked Mr. Gibson for permission to use various border designs from the Santa Fe and Plains Collections in postage stamps which would be issued in 1996 and called the "American Indian Dances" stamp series.  According to the Joint Stipulated Facts submitted by both parties to the court, "Ms. Belsky and Mr. Gibson agreed that if the designs were used by the U.S. Postal Service, no credit to RT Graphics would be printed on the stamps."

On August 2, 1995, Ms. Belsky sent Mr. Gibson a form calling for a signature by RT Graphics to corroborate their agreement. Ms. Belsky had signed the form before she transmitted it to the plaintiff.  The form states:

> This document is to confirm that RT Graphics, Inc. has given permission to the United States Postal Service to use borders selected from the SFC [Santa Fe] and PLC [Plains Collections] Mad–EPS in a stamp series to be issued in 1996.  The material is not copyrighted and there are no fees or royalties associated with the granting of this permission.

This document was never executed by RT Graphics, at least partly because it erroneously indicated that the border designs were not copyrighted.  In response, the President of RT Graphics, Arthur B. Bernstein, wrote a letter to Ms. Belsky on August 15, 1995. The letter reads as follows:

I understand that the United States Postal Service is considering the use of one or more of our images or borders in a U.S. Postal Stamp Service series that will be issued in 1996.  I can not think of a more profound affirmation of the work we do here.  This is a great honor for us.

This document is to confirm that RT Computer Graphics, Inc. gives permission to the United States Postal Service to use images and/or borders selected from the Santa Fe Collection and the Plains Collection electronic clip art libraries in a stamp series to be issued in 1996.  The material within these Collections is provided royalty free and there are no fees or royalties associated with the granting of this permission.

RT Computer Graphics, Inc. respectfully requests that should any artwork from these collections be considered or used, that copies of the design(s) be forwarded to RT Computer Graphics, Inc. as is timely and appropriate.  If there is any literature that would be associated with the release of the stamp(s), we would of course be delighted to receive mention or credit.

In late December, 1995, Ms. Belsky called Mr. Bernstein and asked for permission to use the border designs in products related to the American Indian Dances stamp series. Mr. Bernstein responded by sending a document entitled "Use Agreement" which was drafted and executed by Paul D. Gibson. The Use Agreement, with the exception of a date and signature from Mr. Gibson,[2] contained only one three-sentence paragraph. It states:

> This document is to confirm that RT Graphics, Inc. has given permission to the United States Postal Service to use its American Indian border designs in any philatelic products related to the American Indian Dance stamp series.  There are no fees associated with the granting of this permission.  RT Graphics, Inc. requires a credit in said materials.

---

1.  The United States Copyright Office issued Copyright Registration Nos. VA 433–155 (The Santa Fe Collection) and Txu 685–665 (The Plains Collection), on October 29, 1990, and February 13, 1995, respectively.

2.  The Use Agreement was signed by Mr. Gibson, as "Representative RT Graphics, Inc.," on January 2, 1996, but was misdated "1/2/95."

In June of 1996, the Postal Service introduced to the public the American Indian Dances stamp series along with related products. The related products included stationery sets, T-shirts, wrapping paper, cups, wall posters, a StampFolio (including a CD of Indian dance recordings), a Commemorative Panel with historical information and engravings, a pane of twenty commemorative stamps signed by artist Keith Birdsong, an unsigned pane of twenty commemorative stamps, and a First–Day Souvenir folder.[3]

Mr. Bernstein became aware that the products did not contain any credit to RT Graphics. On June 28, 1996, Mr. Bernstein called Ms. Belsky and discussed, among other issues, the lack of credit given to RT Graphics on any of the related products incorporating their copyrighted border designs. The moment she received his call, Ms. Belsky realized that credit to RT Graphics had been inadvertently omitted in the Stamp-Folio and First–Day Souvenir. At least twice in the next few weeks, Ms. Belsky tried unsuccessfully to reach a compromise with Mr. Bernstein that would compensate RT Graphics for the omission.

RT Graphics subsequently filed a complaint in the United States District Court for the District of New Mexico, alleging trademark and copyright infringement, as well as a claim for the breach of the credit provision contained in the Use Agreement. In that action, the trademark claim was dismissed with prejudice, and the copyright claim was transferred to this court.[4] *RT Computer Graphics, Inc. v. United States Postal Service,* Civ. No. 96–1192, slip op. at 2 (D.N.M. May 5, 1997). Credit to RT Graphics was eventually given in at least two products—a stationery set and a coffee mug—which were sold only after plaintiff filed its complaint in the New Mexico court.

Plaintiff then filed a first amended complaint in this court, alleging that the border designs were used by the Postal Service "without permission, license or consent from RT Graphics" and, therefore, that the defendant has infringed plaintiff's copyrights in the designs. According to the plaintiff, two activities were carried out without its permission: (1) the use of the designs in postage stamps, and (2) the use of the designs in related products.[5] RT Graphics alleges that "[d]espite having actual knowledge of Plaintiff's assertion of ownership of the copyright to the Border Designs, the USPS [Postal Service] has released additional promotional literature in its marketing of the infringing stamps while still denying any compensation to RT Graphics in callous disregard of Plaintiff's rights." The plaintiff contends that it has been damaged due to "lost recognition and advertising for the company," and because it has "received no compensation of any kind for use of the Border Designs on hundreds of thousands, if not millions, of philatelic products, and on millions of stamps, nationwide."

Prior to filing an answer to plaintiff's complaint, defendant moved for summary judgment of non-infringement, arguing that "[w]here a work is reproduced with the consent of the copyright owner, that consent is a complete defense to a claim that the reproduction infringes the copyright." Defendant asserts that "RT Graphics expressly consented to the allegedly infringing activity in two documents, namely, the Bernstein Letter and the Use Agreement."

RT Graphics, in turn, filed its own motion for summary judgment. Plaintiff rejected the government's consent defense by arguing

---

3. The plaintiff has not clearly alleged the full extent to which the American Indian Dances stamps and related products make use of the border designs for which RT Graphics holds copyrights. The parties have stipulated, however, that at least some of both the stamps and related products do contain designs copyrighted by plaintiff, and that information is sufficient for the court's decision.

4. RT Graphics voluntarily dismissed the breach of contract claim in the New Mexico action and initially elected not to pursue such a claim in this

forum. However, by leave of the court, plaintiff filed a second amended complaint on March 3, 1999, which added a breach of contract claim to the claims already before this court.

5. The parties have stipulated that these activities are treated separately in the Bernstein Letter (relating to permission to use the design in postage stamps) and in the Use Agreement (relating to permission to use the designs in related products.)

that "any consent offered by RT Graphics was wholly conditioned upon the USPS [Postal Service] providing credit to RT Graphics in the Related Products." RT Graphics characterizes the Use Agreement as containing a condition precedent, namely, the granting of credit to RT Graphics. According to the plaintiff, since this condition allegedly had not been met, the Postal Service never had plaintiff's consent. Alternatively, RT Graphics argues that the Postal Service's failure to give credit was a material breach of the essential terms of the licensing agreement, which gave plaintiff the right to rescind the agreement and sue for copyright infringement.

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect.[6] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991); *Rust Communications*

*Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622, 1991 WL 93077 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presump-

---

**6.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including RCFC 56. *See Jay v. Secre-*

*tary of DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld-Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

tions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

In the above-captioned case, the parties agree that summary judgment is appropriate and have filed affidavits, documents and joint stipulations of fact. Moreover, no material issues of disputed fact have been identified by the parties or by the court.

The United States Constitution provides a basis for the congressional enactment of copyright protection: "The Congress shall have Power ... to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings

and Discoveries." U.S. Const. art. I, § 8, cl. 8; *see Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 346, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d 832, 838 (Fed.Cir.1992) (rehearing denied). The limited monopoly which Congress may authorize is "intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574, *reh'g denied,* 465 U.S. 1112, 104 S.Ct. 1619, 80 L.Ed.2d 148 (1984); *see Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d at 842. Long ago, at the time of a copyright law revision in 1909, the Judiciary Committee of the House of Representatives noted:

The enactment of copyright legislation by Congress under the terms of the Constitution is not based upon any natural right that the author has in his writings, ... but upon the ground that the welfare of the public will be served and progress of science and useful arts will be promoted by securing to authors for limited periods the exclusive rights to their writings.

\* \* \*

In enacting a copyright law Congress must consider ... two questions: First, how much will the legislation stimulate the producer and so benefit the public, and, second, how much will the monopoly granted be detrimental to the public? The granting of such exclusive rights, under the proper terms and conditions, confers a benefit upon the public that outweighs the evils of the temporary monopoly.

*Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. at 429, 104 S.Ct. 774 (citing H.R.Rep. No. 60–2222, at 7 (1909)).

■ According to the United States Supreme Court, originality is the *sine qua non* of copyright, and it is a constitutional requirement. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. at 345, 346, 111 S.Ct. 1282. An "original" work is one which is independently created by an author and

which possess at least a minimal degree of creativity. *Id.* at 345, 111 S.Ct. 1282 (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 2.01[A], [B] (1990)). Even though a later work closely resembles an earlier work, the later work may still be original as long as any similarity is not the result of copying. *Id.*

The Copyright Act of 1976 states that "[c]opyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated either directly or with the aid of a machine or device." 17 U.S.C. § 102(a) (1994); *see Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. at 432, 104 S.Ct. 774; *Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d at 838. However, the protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery," which is contained in a work. 17 U.S.C. § 102(b); *see Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. at 348, 111 S.Ct. 1282 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."); *Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d at 838. When a work is copyrighted, § 106 of the Copyright Act confers a bundle of exclusive rights to the copyright owner. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 546, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998); *see MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d 769, 778 (3d Cir.1991). Title 17 includes a list of these rights, as follows:

Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C.A. § 106 (West 1994 & Supp.1999).

■ To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. at 361, 111 S.Ct. 1282. The United States may be liable for copyright infringement under 28 U.S.C. § 1498(b). *Pentagen Technologies Int'l Ltd. v. United States,* 175 F.3d 1003, 1005 (Fed. Cir.1999); *Boyle v. United States,* 44 Fed.Cl. 60, 62 (1999); *Steve Altman Photography v. United States,* 18 Cl.Ct. 267, 279 (1989). In pertinent part, 28 U.S.C.A. § 1498(b) reads:

(b) Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code ....

28 U.S.C.A. § 1498(b) (West 1994 & Supp. 1999). The Court of Federal Claims applies the substantive law of Title 17 of the United States Code when evaluating copyright infringement claims against the United States. *See Steve Altman Photography v. United States,* 18 Cl.Ct. at 279 (citing *Williams & Wilkins Co. v. United States,* 203 Ct.Cl. 74, 487 F.2d 1345 (1973), *aff'd per curiam,* 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975)).

▮▮▮ "[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the [Copyright Act] or who makes a fair use of the work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. at 433, 104 S.Ct. 774 (footnote added).[7] A person may be authorized by a copyright holder to use the holder's copyrighted material, but any "transfer of copyright ownership" must be in writing and signed. *See* 17 U.S.C. § 204(a) (1994);[8] *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 751–52 (11th Cir.1997); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774–75 (7th Cir.1996); *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d at 778; *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 556, 558 (9th Cir.1990), *cert. denied sub nom. Danforth v. Cohen,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). In section 101, the Copyright Act defines a "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." 17 U.S.C.A. § 101 (West 1994 & Supp.1998). Thus, nonexclusive licenses are explicitly removed from the § 204(a) writing requirement. *Jacob Maxwell v. Veeck,* 110 F.3d at 752; *I.A.E., Inc. v. Shaver,* 74 F.3d at 775

("[I]n the case of an implied nonexclusive license, the licensor-creator of the work … does not transfer ownership of the copyright to the licensee. The copyright owner simply permits the use of a copyrighted work in a particular manner."); *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d at 778 ("[N]onexclusive license does not amount to a 'transfer' of ownership."); *Effects Assocs., Inc. v. Cohen,* 908 F.2d at 558. Under federal law, nonexclusive copyright licenses can be granted orally or implied from conduct. *Graham v. James,* 144 F.3d 229, 235 (2d Cir.1998) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A][7], at 10–43); *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d at 752; *I.A.E., Inc. v. Shaver,* 74 F.3d at 775 (also quoting *Nimmer on Copyright*); *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d at 778–79 (also quoting *Nimmer on Copyright*); *Effects Assocs., Inc. v. Cohen,* 908 F.2d at 558 (also quoting *Nimmer on Copyright*). The existence of either an exclusive or nonexclusive license creates an affirmative defense to a claim of copyright infringement. *I.A.E., Inc. v. Shaver,* 74 F.3d at 775; *see Graham v. James,* 144 F.3d at 236.

▮▮▮ In the instant case, plaintiff claims infringement by the Postal Service of RT Graphics' copyrighted border designs from the Plains and Santa Fe Collections of electronic clip art. Plaintiff contends that the copyrights were infringed both by (1) the Postal Service's use of the border designs in the American Indian Dances stamp series, and (2) by the Postal Service's use of the border designs in promotional products related to that stamp series. Defendant does not deny that it used the border designs in the stamps and related products, nor does it contest the validity of the copyrights. Rather, the government argues that there can be no copyright infringement because the Postal

---

7. Fair use is an express limitation on the exclusive rights afforded to copyright holders. *See* 17 U.S.C. § 107 (1994). Under § 107 of the Copyright Act, fair use of copyrighted material may include use for "purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research,...." *See id.*

8. 17 U.S.C. § 204(a) provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

Service secured from RT Graphics licenses which explicitly authorized the use of the copyrighted border designs.

There are two documents, the "Bernstein Letter" and the "Use Agreement," which address any outstanding agreements between the parties for the use of the border designs by the Postal Services. The parties have stipulated that the Bernstein Letter relates only to the issue of permission to use the border designs in the postage stamps, and the Use Agreement relates only to permission to use the border designs in the related products. The court will discuss each agreement in turn.

The Bernstein Letter was written on August 15, 1995 by the President of RT Graphics, Arthur B. Bernstein, to Jana Belsky of PhotoAssist, who was dealing with the plaintiff on behalf of the Postal Service. The second paragraph of the letter states:

> This document is to confirm that RT Computer Graphics, Inc. gives permission to the United States Postal Service to use images and/or borders selected from the Santa Fe Collection and the Plains Collection electronic clip art libraries in a stamp series to be issued in 1996. The material within these Collections is provided royalty free and there are no fees or royalties associated with the granting of this permission.

The court agrees with defendant's contention that the Bernstein Letter specifically authorized the use of the Santa Fe Collection and Plains Collection border designs in the American Indian Dances stamp series. The language of the letter indicates that RT Graphics intended to grant a gratuitous, non-exclusive license to the Postal Service to use plaintiff's copyrighted material. While plaintiff did state that it "would of course be delighted to receive mention or credit" for the designs in any announcements associated with the unveiling of the stamps, plaintiff did not explicitly require any compensation. The letter states only that plaintiff:

> *respectfully requests* that should any artwork from these collections be considered or used, that copies of the design(s) be forwarded to RT Computer Graphics, Inc. as is timely and appropriate. If there is

any literature that would be associated with the release of the stamp(s), *we would of course be delighted to receive mention or credit.*

(Emphasis added.) No conditions for use on the stamps are stated in Mr. Bernstein's letter. Nothing in the record contradicts this notion, and it is entirely consistent with the oral agreement which Ms. Belsky and Mr. Bernstein had reached earlier. Thus, defendant did not infringe plaintiff's copyright by using the border designs in the actual stamps themselves.

█ The question of copyright infringement is not as clear, however, with respect to the Postal Service's use of the copyrighted border designs in the promotional products related to the stamps. RT Graphics, through the Use Agreement, gave the Postal Service permission to utilize the border designs in related products. The Use Agreement reads as follows:

> This document is to confirm that RT Graphics, Inc. has given permission to the United States Postal Service to use its American Indian border designs in any philatelic products related to the American Indian Dance stamp series. There are no fees associated with the granting of this permission. RT Graphics, Inc. *requires* a credit in said materials.

(Emphasis added.) Thus, while RT Graphics again required no monetary compensation, plaintiff indicated that it "requires" a credit for use, presumably as the creator and/or copyright holder of the border designs. Prior to the filing of plaintiff's original complaint in the United States District Court for the District of New Mexico, at least four related products—a poster, a StampFolio, a Commemorative Panel and a First–Day Souvenir folder—had been offered for sale to the public. None of these products contained any credit to RT Graphics, and plaintiff correspondingly claims copyright infringement. RT Graphics argues that the credit requirement was a condition precedent to the granting of the license. Plaintiff contends that "[n]o credit was given, the condition precedent was not satisfied, and RT Graphics' obligation to provide permission never mate-

rialized." Alternatively, plaintiff alleges that the Postal Service's complete failure to credit RT Graphics was a material breach of the licensing agreement, and that the breach gave plaintiff the right to rescind the agreement.

Regarding plaintiff's first·argument that the credit requirement was a condition precedent to the granting of the license, the court does not agree. According to the Restatement (Second) of Contracts § ¨224 (1981), a condition is "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." *See also Wells Fargo Bank, N.A. v. United States,* 88 F.3d 1012, 1019 (Fed.Cir.1996) (quoting *In re Matthieson,* 63 B.R. 56, 60 (D.Minn.1986), for the statement that "a condition precedent is a condition precedent to performance under the contract, not formation of the contract. When a condition precedent is not satisfied, it relieves a party to the contract of the obligation to perform. It does not negate the existence of the contract or the binding contractual relationship of the parties."), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1245, 137 L.Ed.2d 328 (1997). "Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." *Effects Assocs., Inc. v. Cohen,* 908 F.2d at 559 n. 7; *accord Jacob Maxwell, Inc. v. Veeck,* 110 F.3d at 754; *I.A.E., Inc. v. Shaver,* 74 F.3d at 778.

In the present case, the Use Agreement states that "RT Graphics, Inc. requires a credit in said materials." There is no clear signal that credit for the border designs was a condition which had to be met prior to the Postal Service's use of the border designs. The phrase "credit in said materials" does not unambiguously indicate that RT Graphics' copyright notices were to be placed alongside the border designs. Rather, the phrase could also be interpreted as having required that plaintiff be associated with the border designs in a manner which was at the Postal Service's discretion. Furthermore, the credit requirement could not be a condi-

tion precedent because the Postal Service simply could not have published plaintiff's copyright credit prior to publishing the border designs. They necessarily had to occur at least contemporaneously, for the copyright notice would have been without meaning had it appeared beforehand, prior to the use of the associated, copyrighted material.

Courts in other cases involving similar circumstances have also been unwilling to find conditions precedent to the granting of a license. For example, in *Graham v. James,* 144 F.3d 229 (2d Cir.1998), a publisher of CD–ROM disks containing compilations of computer programs contracted with a computer programmer to create a file-retrieval program for the disks. *Id.* at 233. The trial court in that case found that the programmer had licensed his program to the publisher, and that the publisher had breached the licensing agreement by failing to make required payments. *Id.* at 235. On appeal to the United States Court of Appeals for the Second Circuit, the programmer contended that he could sue for copyright infringement because the licensing agreement had been rescinded. *Id.* at 236. Among the programmer's arguments was the allegation that the license had been voided when the publisher breached its conditions by nonpayment of royalties and removal of the programmer's copyright notice. *Id.*

The court in *Graham v. James,* however, found that the publisher's obligations to pay royalties and to credit the programmer were properly characterized as covenants rather than conditions. *Id.* at 237.[9] The Court of Appeals stated:

Generally, "[i]f the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] ... and if such covenant constitutes an enforcible contractual obligation, then the [licensor] will have a cause of action for breach of contract," not copyright infringement. 3 *Nimmer on Copyright, supra,* § 10.15[A], at 10–120. However, "[i]f the nature of a licensee's violation consists of a failure to satisfy a condition to the license ..., it

---

9. The law of the State of New York recognizes a presumption against the existence of conditions precedent. *Graham v. James,* 144 F.3d at 237

(noting *Grand Union Co. v. Cord Meyer Dev. Co.,* 761 F.2d 141, 147 (2d Cir.1985)).

follows that the rights dependant upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright." *Id.* at 10–121 (citations omitted); . . . .

*Id.* at 236–37 (alterations in original) (citations omitted). The court in *Graham v. James* then noted that the programmer had furnished the publisher with the file-retrieval program before any royalties were paid, and "contract obligations that are to be performed after partial performance by the other party are not treated as conditions." *Id.* at 237 (citations omitted).

A similar situation to that presented to the court in *Graham v. James* is presented in plaintiff's case. Plaintiff performed its part of the bargain by furnishing the border designs for use by the Postal Service. As the required credit was to be given by the Postal Service after the plaintiff furnished the material, crediting was an obligation to be performed after performance by the plaintiff, and, therefore, was not a condition precedent.

In *Jacob Maxwell, Incorporated v. Veeck*, 110 F.3d 749 (11th Cir.1997), the United States Court of Appeals for the Eleventh Circuit also was unwilling to find a condition precedent in a factual scenario similar to that of RT Graphics. In that case, a songwriter named James Albion agreed to write a team song for a minor league baseball franchise, the Fort Myers Miracle:

Albion agreed to write the song free of charge, to provide the Miracle with the Digital Audio Tape master, and to grant the Miracle an exclusive license. In return, Albion asked only that the Miracle pay his out-of-pocket production costs and that the team credit him as the author any time the song was played at games or distributed on cassette tapes.

*Id.* at 751. Albion delivered the song to the Miracle, and the team proceeded to play it at many games during the course of a summer. *Id.* Albion, however, was never given the promised authorship credit, and he sued the team, alleging copyright infringement and breach of contract. *Id.* A federal district court granted the Miracle's motion for summary judgment of noninfringement, holding that Albion had granted the team a nonexclusive license to play the song. *Id.*

On appeal, the court in *Maxwell* determined that payment of Albion's costs and public recognition of his authorship of the song were not made conditions precedent to the team's right to play the song. *Id.* at 753. The court held that the songwriter had "expressly granted the Miracle permission to play the song before payment was tendered or recognition received." *Id.* at 754. According to the court, Albion had granted a non-exclusive license to the Miracle. *Id.* at 753. The court stated:

Albion did not withdraw permission although he attended many games and heard the song played, still without payment or recognition, on various occasions. Indeed, he . . . encourag[ed] the Miracle to continue to play the song. Under these circumstances, we cannot say that [Albion's] permission to play was conditioned on prior payment and public recognition.

*Id.* at 754.

Similarly, in the present case, RT Graphics drafted a Use Agreement which permitted the Postal Service to use the copyrighted border designs in the related products. Plaintiff did not clearly articulate a requirement that the Postal Service give credit before use of the border designs. The court does not agree with plaintiff that the furnishing of authorship credit was a condition precedent to RT Graphics' granting of a license to use the designs, especially in light of the presumption in the law against such conditions discussed above.

Yet another case, *Effects Associates, Incorporated v. Cohen*, 908 F.2d 555 (9th Cir. 1990), also presents a factual scenario on point with plaintiff's situation. There, the United States Court of Appeals for the Ninth Circuit examined a copyright infringement claim brought by a special effects company against a low-budget horror movie producer. *See id.* at 555–56. Due to the producer's dissatisfaction with movie footage created by the company, he paid the company only half of an orally-promised amount. *Id.* at 556.

After the footage was used in the producer's movie, the effects company brought a copyright infringement claim in federal district court. *Id.* After procedural maneuvering, the district court granted summary judgment on that copyright claim to the producer, holding that the effects company had granted the producer an implied license to use the footage. *Id.* On appeal, a Ninth Circuit panel affirmed, holding that the language of the parties' oral agreement did not "support a conclusion that full payment was a condition precedent to [the producer's] use of the footage." *Id.* at 559 & n. 7. The court noted that the effects company's president had never told the producer that failure to pay would be viewed as copyright infringement. *Id.* at 559 n. 7.

■ As an alternative argument, RT Graphics notes that the Postal Service completely failed to give plaintiff any credit for the border designs in the related products prior to the time of plaintiff's lawsuit. Plaintiff argues:

> If the language in the Use Agreement in the instant case is construed simply as a covenant by the USPS [Postal Service] to provide credit, rather than a condition, such promise was the sole and entire consideration to be given to RT Graphics. The failure to grant the credit was therefore unequivocally a breach so material as to create a right of rescission. It is unarguable that the total failure to provide the credit could be anything less than a breach of the "essential terms" of the agreement. Such material failure of performance gives RT Graphics the right to rescind and sue for infringement.

As support for their proposition, RT Graphics relies on the decision in *Dow Chemical Company v. United States*, 32 Fed.Cl. 11 (1994).[10] Plaintiff has accurately summa-

rized the facts of the *Dow Chemical* case, as follows:

> A patentee had entered into a patent license with the government, granting the government permission to practice a subterranean mine slurry injection invention. The license provided that the government had a royalty-free license to practice the invention to inject up to 2.5 million cubic [yards] of slurry, but further provided that once that volumetric threshold was reached the license thereafter bore a royalty. The government exceeded the specified threshold for royalty-free use, but despite the patentee's demands never paid any royalties whatsoever to the patentee.

(Citations omitted.) The patentee then brought suit against the government, alternatively alleging either patent infringement or breach of the licensing agreement. *Id.* at 15.

The court in *Dow Chemical* noted that:

> It is hornbook law that a patent license contract can be rescinded for breach of its essential terms. This is true even where the contract makes no provision for cancellation by the licensor, so long as the breach is in a matter considered essential to the continuance of the contract.

*Id.* at 17 (citations omitted). The court held that the government's conduct was a "classic breach of contract by repudiation," *id.* at 18, and that the patentee was justified in treating the license as extinguished because the government had never performed and had repudiated, *id.* at 19.

In the present case, RT Computers attempts to draw a parallel between the facts of its case and those of *Dow Chemical.* Plaintiff contends that the Postal Service's failure to give RT Graphics credit for the border designs used in the related products

---

10. While *Dow Chemical Company, United States* concerns infringement of a patent, rather than infringement of a copyright, the court notes that prior decisions involving patent licenses between a private party and the government may sometimes be helpful when a dispute involves alleged copyright infringement by the government. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. at 439, 104 S.Ct. 774 (it is appropriate to refer to patent law cases because of the "historic kinship between patent law and copyright law"); *Auerbach v. Sverdrup Corp.,* 829 F.2d 175, 179–80 (D.C.Cir.1987), *cert. denied sub nom. Terminal Realty Penn Co. v. Auerbach,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988); *Boyle v. United States,* 44 Fed.Cl. 60 (Fed.Cl.1999) ("Section 1498(b) was created when Congress 'extended' the provisions of section 1498(a) [relating to patent infringement] to permit an action in [the Court of Federal Claims] for copyright infringements.").

was a breach of the "essential terms" of the Use Agreement. Therefore, according to plaintiff, it, like the patentee in *Dow Chemical*, could rescind the license and sue for infringement as if the license were void *ab initio*.

Plaintiff fails to note, however, that the actions taken by the parties during the course of the dispute in *Dow Chemical* were different from the parties' actions in the present case. These differences are sufficiently significant to make the cases distinguishable. The court in *Dow Chemical* was careful to note that:

> When termination is sought due to the failure of the licensee to pay royalties the licensee's conduct must be such as to indicate an intention to repudiate the contract. That is, nonpayment of royalties, unless long continued, is not ordinarily regarded as sufficient to terminate the license in the absence of a covenant to that effect.

*Id.* at 17 (citations omitted). The government in *Dow Chemical*, according to the language of that decision:

> [C]learly and unequivocally expressed its intention to never pay royalties to [the patentee]. Not only did the government contest the validity of [the patentee's] patent, but it also challenged the viability of the license contract itself. The government's conduct in this case constitutes classic breach of contract by repudiation. The government renounced all of its obligations under the license agreement, and in the court's view forfeited all of its rights contained in the license agreement. . . .

*Id.* at 18.

The Postal Service's actions in the present case do not evidence a repudiation of the Use Agreement. The defendant never challenged the validity of RT Computers' copyrights or the Use Agreement. Moreover, the Postal Service never objectively indicated an intention to not pay royalties as the government did in *Dow Chemical*. Plaintiff made the Postal Service's representative, PhotoAssist, aware of the failure to give credit on June 28,

1996. At least twice in the next few weeks, a representative of PhotoAssist spoke with RT Graphics' president and tried to reach a compromise that would compensate plaintiff for the omission. Moreover, the defendant ultimately, on its own initiative, did give plaintiff credit on at least some of the products at issue. There is no indication in the record that the Postal Service, or anyone acting on its behalf, informed RT Graphics that it would not perform as required by the Use Agreement. There was no repudiation by the defendant of the licensing agreement.

Furthermore, the license at issue in *Dow Chemical* was entered into by the parties in 1972. *Id.* at 14. It was not until approximately eleven years later, in 1983, that the suit was brought. *Id.* at 15. In contrast, RT Graphics commenced its infringement action in federal district court in New Mexico on August 22, 1996, less than three months after the introduction of the related products and less than two months after it first notified PhotoAssist of the failure to give credit. This short time period cannot be considered a "long continued" nonpayment of royalties, like that in *Dow Chemical*, which would indicate an intention to repudiate the license agreement.[11]

In addition, prior to the filing of the infringement suit, RT Graphics never took affirmative steps to terminate the license which it had granted. This court agrees with other courts which have previously held that such a measure is necessary on the part of the copyright holder. In *Graham v. James*, the Court of Appeals for the Second Circuit stated that "[e]ven assuming [the publisher] materially breached the licensing agreement and that [the programmer] was entitled to rescission, such rescission did not occur automatically without some affirmative steps on [the programmer's] part." 144 F.3d at 237–38. In *Maxwell*, the Court of Appeals for the Eleventh Circuit expressed a similar view:

> [E]ven assuming arguendo that the Miracle's conduct constituted a material breach

---

11. The court notes that the American Indian Dances stamp series was still available for purchase as late as the fall of 1998, and plaintiff has made no claim that the Postal Service would have been unable or unwilling to rectify, in later issuances of related products, the initial failure to give credit.

of the parties' oral understanding, this fact alone would not render the Miracle's playing of the song pursuant to [Albion's] permission a violation of [Albion's] copyright. Such a breach would do no more than entitle [Albion] to rescind the agreement and revoke [his] permission to play the song in the future, actions [he] did not take during the relevant period.

110 F.3d at 753.

Like the programmer in *Graham v. James* and the songwriter in *Maxwell*, RT Graphics never formally withdrew previously-given permission which allowed the alleged infringer to use the copyrighted material. *See also Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1455 (9th Cir.1996) (even assuming that movie producer materially breached licensing agreement to use composer's song in film, composer never attempted to exercise any right of rescission and summary judgment of noninfringement of copyright was proper); *Cities Serv. Helex, Inc. v. United States*, 211 Ct.Cl. 222, 543 F.2d 1306, 1313 (1976) ("A material breach does not automatically and ipso facto end a contract. It merely gives the injured party the right to end the agreement; . . . ."). In the case at bar, the court finds that there was no rescission of the contract by plaintiff. Moreover, the Postal Service's conduct was insufficient to justify any rescission which could have taken place, and did not indicate a repudiation of the licensing agreement. Accordingly, the court holds that the Use Agreement was at all times valid and enforceable during the course of this dispute, and any remedy which the plaintiff may seek for its failure to receive credit cannot properly be based on a theory of copyright infringement.

### CONCLUSION

After thoroughly reviewing the record and carefully considering the arguments, the court holds that valid and enforceable licensing agreements existed at all times between the parties. These licensing agreements gave plaintiff's consent for the Postal Service's use of selected copyrighted border designs in the American Indian Dances stamp series and related products. The credit for the designs which RT Graphics required

was not a condition precedent to the granting of the license, nor did defendant repudiate the licensing agreement. Therefore, the court **GRANTS** the defendant's motion for summary judgment of noninfringement of plaintiff's copyrights, and **DENIES** plaintiff's motion for summary judgment of copyright infringement. The court notes that this decision does not dispose of the breach of contract claim presented in plaintiff's second amended complaint.

**IT IS SO ORDERED.**